IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARREN LAMAR L., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-01878-L-BN |
| | § | |
| ANDREW M. SAUL, | § | |
| Commissioner of Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 5.

Plaintiff Darren Lamar L. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 17.

The Commissioner has filed his response in opposition, s*ee* Dkt. No. 18, and Plaintiff has filed his reply, *see* Dkt. No. 19.

For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that he is disabled due to coronary artery disease, malignant hypertension, diabetes, gout, and degenerative arthritis of the lumbar spine. *See* Dkt. No. 15-1 at 48.

After Plaintiff's application for a period of disability and disability insurance benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on January 21, 2016. *See* Dkt. No. 15-1 at 125.

The ALJ denied Plaintiff's claims on March 7, 2016. *See id.* at 138. But the ALJ's decision was vacated by the Appeals Council and Plaintiff's case was remanded to another ALJ. That ALJ was instructed to resolve the previous ALJ's failure to account for all of Plaintiff's severe impairments in Plaintiff's residual functional capacity, and the failure to adequately evaluate all of the medical opinion evidence.

A second administrative hearing was held on April 30, 2018. *See id.* at 47.

At the time of the hearing, Plaintiff was 47 years old. *See id.* at 36. Plaintiff has a high school education. *See* Dkt. No. 17 at 3.

Plaintiff testified that he has work experience as a tow truck driver, an electrical installer and forklift driver, and an aircraft loading supervisor. *See* Dkt. No. 15-1 at 71. Plaintiff also worked as a cable television installer and communication technician. *See id.* 72. Plaintiff has not engaged in substantial gainful activity since August 1, 2009. *See id.* at 21.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 38. Although the ALJ found that Plaintiff's severe impairments included "obesity; degenerative disc disease; chronic back pain; coronary artery disease; hypertension; hyperlipidemia; palpitations; diabetes mellitus; history of bilateral ulnar neuropathy; [and] gout without significant issues of gout flare," *id.* at

21, the ALJ nonetheless concluded that these impairments did not meet or equal the criteria of a severe impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, *see id.* at 26.

The ALJ also found that Plaintiff's tendonitis, chronic neck pain, Dupuytren's contractures and right trapezius muscle spasms, knee pain, headaches, cellulitis of the left great toe, hemorrhoids, and general anxiety disorder are not severe impairments. *See id.* at 23-26.

The ALJ further determined that Plaintiff has the residual functional capacity to perform light work with the following restrictions:

> lifting or carrying 20 pounds occasionally and 10 pounds frequently as well as sitting for 6 hours and standing or walking for 6 hours in an 8-hour workday. He can push or pull to the same weight as lifting or carrying. He cannot operate foot controls. He cannot climb ladders, ropes, or scaffolds. He can frequently reach and handle. He must avoid concentrated exposure to extreme cold temperatures. He must avoid concentrated exposure to working at unprotected heights or with hazardous moving machinery.

*Id.* at 27.

Given Plaintiff's age, education, and exertional capacity for light work, the ALJ determined that Plaintiff is not disabled and otherwise capable of making a successful adjustment to such work. The ALJ concluded that Plaintiff could return to past relevant work a communications technician as generally but not actually performed. *See id.* at 36. The ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he would also be able to perform the requirements of representative occupations such as a small products assembler, a machine tender, or a bench assembler. *See id.* at 37.

Plaintiff appealed the decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. In Plaintiff's appeal he claims that the ALJ erred in his residual functional capacity ("RFC") assessment by failing to analyze the opinions of Plaintiff's treating physician in accordance with the regulations, Agency policy, and Fifth Circuit precedent. *See* Dkt. No. 17 at 4-5. Plaintiff further argues that the ALJ's analysis of the treating source opinion evidence is legally insufficient and factually inaccurate.

The Commissioner responds by arguing that substantial evidence supports the ALJ's finding. *See* Dkt. No. 18. The Commissioner argues that the ALJ properly weighed the medical opinion evidence and reached a supportable conclusion. *See id.* at 3-7.

The undersigned concludes that the hearing decision should be reversed, and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment

5

prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to

fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff's central argument is that the ALJ should not have rejected the functional assessments of Plaintiff's treating physician, Dr. Roy Caivano, because there is no contradictory opinion from another examining or treating physician. *See* Dkt. No. 17 at 5.

Plaintiff argues that the ALJ's analysis of the treating source opinion evidence is legally insufficient and factually inaccurate. *See id.* at 9-19. Plaintiff asserts that, if the ALJ was uncertain about the medical opinion evidence, she should have sought clarification from the treating sources. *See id.*

In Plaintiff's brief, he first points out that in February 2016 Dr. Caivano recommended that

> Plaintiff can lift/carry up to 10 pounds rarely; sit, stand, and walk a total of two hours each with a sit/stand option; and needs a cane to ambulate effectively, as he can walk only 15-20 yards without an assistive device. Tr. 1595-1596. He can only occasionally reach in all directions, handle, finger, feel, push, and pull with the left arm. Tr. 1596. With the right arm, he can only occasionally reach overhead

7

> and handle; and can rarely reach, finger, feel, push, and pull. *Id.* He can occasionally use foot controls bilaterally; and can rarely climb stairs, ramps, ladders, or scaffolds, and rarely balance, stoop, kneel, crouch, crawl, and rotate head and neck. Tr. 1596-1597. He can occasionally operate a vehicle, rarely be exposed to moving mechanical parts, humidity and wetness, dust, and odors, and never be exposed to unprotected heights, vibrations and temperature extremes. Tr. 1597.

Dkt. No. 17 at 6-7. And the record shows that indeed Dr. Caivano filled out a form document on February 17, 2016 making the above-stated recommendations. *See* Dkt. No. 15-1 at 1600-02.

Plaintiff further asserts that in March 2018, Dr. Caivano's assessment provided that

> Plaintiff can lift and carry no more than 10 pounds occasionally; can sit for three hours in an eight-hour day; can stand/walk for three hours in an eight-hour day; and would need to lie down and recline for about 20-25% of the workday. Tr. 1626. Although he does not need a cane to ambulate effectively, he does need a cane occasionally due to gout and Achilles tendonitis. Tr. 1626-1627. He can only occasionally operate foot controls, reach in all directions, handle, finger, push, and pull, and can never feel with bilateral upper extremities. Tr. 1627. He can rarely climb ramps, stairs, ladders, and scaffolds; rarely stoop, kneel, crouch, and crawl; and only occasionally balance and rotate his head and neck. Tr. 1628. He should never be exposed to unprotected heights and vibrations, only occasionally operate a vehicle, and rarely be exposed to moving mechanical parts, humidity and wetness, dust, odors, fumes, and extreme temperatures. Tr. 1628. He would be off-task more than 25% of the day, absent from work four or more days per month, and able to maintain concentration for less than one hour. Tr. 1625.

Dkt. No. 17 at 7. And the record shows that Dr. Caivano filled out a form document on March 2, 2018 making these recommendations. *See* Dkt. No. 15-1 at 1630-33.

Plaintiff argues that Dr. Caivano's opinions on Plaintiff's limitations are far more detailed and include far greater limitations than the ALJ's finding

acknowledges. *See* Dkt. No. 17 at 8. Plaintiff claims that the record evidence thus shows that Plaintiff met his burden of providing evidence establishing that he is disabled – meaning that, given Dr. Caivano's opinions on Plaintiff's limitations, Plaintiff cannot work 8 hours a day for 5 days a week or an equivalent work schedule. *See id.*; *see also* SSR 96-8p.

Plaintiff also argues that where – as is the case here – the ALJ's residual functional capacity assessment does not describe with specificity all of the practical effects of all of a claimant's demonstrated impairments, the ALJ's residual functional capacity assessment is contrary to law. *See* Dkt. No. 17 at 8.

Plaintiff further argues that the ALJ gave little weight to Dr. Caivano's opinions and failed to adequately consider each of the requirements under 20 C.F.R. § 404.1527 before declining to give Dr. Caivano's opinions weight. *See id.* at 9.

Plaintiff asserts that the ALJ improperly provided only a "cursory acknowledgement of Dr. Caivano's treatment relationship," with Plaintiff and that the ALJ's "discussion was factually inaccurate and overlooked significant facts." *Id.* at 10. For example, Plaintiff points out that the ALJ mistakenly stated that Plaintiff's most recent visit with Dr. Caivano was in May 2017, but in reality Plaintiff visited Dr. Caivano as recently as February 26, 2018. *See id.*

And the record shows that Dr. Caivano is Plaintiff's treating physician and also responsible for Plaintiff's follow-up care. *See* Dkt. No. 15-1 at 1559, 1583, 1634, 1638, 1643, 1646, 1649, 1658, & 1661.

Plaintiff points out that, except for a few isolated findings, every other examining and treating source opinion was consistent with Dr. Caivano's opinions. *See* Dkt. No. 17 at 11.

For example, Plaintiff points to the January 2014 opinion of Dr. Mark Kuper. *See id.* Dr. Kuper opined that Plaintiff is disabled due to diabetes, cardiac issues, and lower back problems. *See id.* Dr. Kuper identified Plaintiff's "impairments as right and left upper extremity pain with MRI evidence of stenosis, bilateral ulnar neuritis, chronic neck pain, diabetes mellitus, cardiac issues, low back problems, and bilateral cubital tunnel syndrome, severe, left greater than right." *Id.* at 11-12.

Plaintiff also points out that even the Agency's own examining physician Dr. Stella Nwankwo's findings are consistent with Dr. Caivano's opinions. *See id.* at 12. Dr. Nwankwo noted that

> Plaintiff had a heart attack in 2005 and underwent stent placement and had another heart attack in 2008 requiring quadruple bypass. Tr. 840; 841. Dr. Nwankwo described echo doppler and EKG findings documenting moderate left ventricular hypertrophy and abnormalities, as well as a cervical spine x-ray in October 2013 showing spurring anteriorly and posteriorly at C5-6. Tr. 839-40. She noted that Plaintiff moved slowly with a cane and had reduced grip strength on the right. Plaintiff had right trapezius spasm, positive Tinel's in bilateral elbows, Dupuytren's contracture, reduced ability to reach in all directions, no pulses in his right leg, and reduced reflexes and pulses throughout. Tr. 844. His pulses were significantly reduced with no pulses in the right leg, 1-2/4 in the right knee, 1/4 of the left knee, and 1/4 in the right ankle. Tr. 844. Dr. Nwankwo's diagnostic impressions included morbid obesity, history of heart attack status-post CABG, hypertension, low back pain, Dupuytren's contracture, abnormal leg pulses, type II diabetes mellitus, and right trapezius spasm. Tr. 845.

*See* Dkt. No. 17 at 12.

Plaintiff argues that the ALJ committed reversible error when she failed to acknowledge the consistency between these assessments. *See id.* Plaintiff claims that, because the assessments of independent sources of evidence confirm each other's conclusions, they cannot be reasonably denied. *See id.*

Plaintiff also points to objective medical findings that are consistent with the opinions of Drs. Caivano, Kuper, and Nwankwo. *See id.* at 13. For example, Plaintiff notes that a cervical spine MRI from 2013 confirms that Plaintiff suffers from a disc bulge at the C6-7 vertebrae. *See id.* And, after Plaintiff had an accident on his motorcycle in 2015, a cervical spine MRI showed a disc protrusion at the C5-6 vertebrae as well as small circumferential disc bulges at the L3-L4, L4-L5, and L5-S1 vertebrae. *See id.* Plaintiff points out that "this evidence undermines the ALJ's speculative reasoning that Dr. Caivano's 2016 opinion 'likely reflected subjective restrictions as residuals from [the motorcycle accident].'" *Id.* at 13-14 (quoting Dkt. No. 15-1 at 34).

Plaintiff also points to a history of objective findings relating to his cardiovascular impairments including a myocardial infarction and a quadruple bypass surgery. *See* Dkt. No. 17 at 14. Plaintiff points to a 2013 stress test that "revealed occasional premature heartbeats, ejection fraction at 48%, and shortness of breath with inconclusive EKG." *See id.* Plaintiff also points to an October 2013 heart catherization and angiography that "revealed a left main coronary artery diffusely stenosed up to 70% in the distal portion, totally occluded LAD, totally occluded light

coronary artery, diffusely stenosed vein graft, and LAD with myocardial bridging with about 30 to 40% stenosis." *See id.*

And Plaintiff asserts that the record evidence shows objective findings relating to his diabetes mellitus. *See id.* at 15. Plaintiff cites a January 2018 hospitalization due to diabetic ketoacidosis. *See id.* Plaintiff also cites the fact that he is morbidly obese, which "can complicate chronic disease of the cardiovascular, respiratory, and musculoskeletal body systems and can result in limitations in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balance, stooping, and crouching." *See id.* (citing SSR 02-1p).

Plaintiff argues that all of this objective evidence is consistent with Dr. Caivano's opinions. *See* Dkt. No. 17 at 15. Plaintiff claims that the ALJ incorrectly gave Dr. Caivano's opinion little weight on the basis that she found them not supported by the evidence. *See id.* at 16.

Plaintiff is essentially arguing that the ALJ should not have rejected the opinion of his treating physician in favor of the ALJ's own lay interpretations of the objective medical findings. *See id.* at 17. And Plaintiff asserts that, if the ALJ was doubtful Dr. Caivano's opinions, the ALJ had an obligation to seek additional information from Dr. Carvano and fully and fairly develop the record. *See id.* at 18-19.

The Commissioner responds by arguing that the ALJ appropriately weighed Dr. Caivano's medical opinion. *See* Dkt. No. 18 at 4-9.

12

For example, the Commissioner argues that the ALJ properly found that Dr. Caivano's February 2016 opinion was provided four months after Plaintiff's September 2015 motorcycle accidence and was thus likely a reflection of that incident. *See id.* at 4.

And the Commissioner points out that the ALJ noted that Dr. Caivano's March 2018 opinion conflicted with Dr. Caivano's own May 2017 assessment. *See id.* at 4-5. And, as the Commissioner puts it, "the ALJ noted that the assessed restrictions in both opinions were inconsistent with the benign findings in treatment notes elsewhere in the record, including Dr. Caivano's longitudinal history of treatment" of Plaintiff. *Id.* at 5. Specifically, the Commissioner argues that Dr. Caivano's March 2018 opinion was based on degenerative disc disease and gout and "most objective notes indicate conservative management of spine complaints and rare mention of gout flares or any significant problems with control of [Plaintiff's] gout." *See id.* at 5.

The Commissioner argues that "the ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly." *Id.*

The Commissioner also argues that Plaintiff's claim that the ALJ was required to apply the 20 C.F.R. § 416.927(c) is misguided. *See id.* The Commissioner cites the Fifth Circuit's decision in *Newton v. Apfel,* 209 F.3d 448 (5th Cir. 2000), and asserts that

> the Fifth Circuit in *Newton* specifically explained that any requirement that an ALJ apply the 20 C.F.R. § 416.927(c) factors is applicable in only very limited circumstances. *Newton*, 209 F.3d at 458. In fact, the holding in *Newton* is limited to circumstances where the ALJ summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical

> expert who had not examined the claimant, and where the record does not contain "competing first-hand medical evidence" that supports the ALJ's decision. *Id.* The Commissioner submits that those circumstances are not present in the instant case because the ALJ did not choose the opinion of a non-examining physician over first-hand medical evidence.

Dkt. No. 18 at 5-6.

Here, the Commissioner claims that the ALJ relied on Dr. Nwankwo's opinion from July 2014. *See id.* at 6. And, specifically, the ALJ relied on imaging studies on the chest and an EKG that revealed normal and expected findings. *See id.* The Commissioner argues that indeed the ALJ properly assigned some weight to Dr. Nwankwo's opinions. *See id.* And the Commissioner points out that the ALJ has the ultimate responsibility for weighing all of the record evidence and deciding which physician's diagnosis is most supported by the record. *See id.*

Next, the Commissioner addresses Plaintiff's argument that the ALJ failed to recognize the fact that Dr. Caivano saw Plaintiff as recently as February 2018. *See id.* at 8. The Commissioner points to Fifth Circuit precedent that holds that the ALJ does not have to specifically discuss all evidence that supports her final decision, nor does she have to discuss all the evidence that was rejected. *See id.* (citing *Falco v. Shalala,* 27 F.3d 160, 163-64 (5th Cir. 1994)).

And the Commissioner asserts that Plaintiff's criticism of the ALJ for assuming that Dr. Caivano's March 2018 opinion relied on Plaintiff's degenerative disc disease and gout is also unfounded. *See id.* According to the Commissioner, "the ALJ never stated that Dr. Caivano's March 2018 opinion *exclusively* relied on degenerative disc disease and gout, but rather that such opinion *specifically* relied on

14

degenerative disc disease and gout." *Id.* The Commissioner argues that the ALJ properly assigned little weight to Dr. Caivano's March 2018 opinion because she found that Dr. Caivano's opinions were inconsistent with the objective medical findings. *See id.* And the Commissioner cites case law from within this district that stands for the proposition that where the ALJ finds a treating physician's opinions are inconsistent with the objective medical evidence, the ALJ may reject the treating physician's opinions without performing a factor-by-factor analysis. *Sere id.* at 8-9 (citing *Wilson v. Colvin*, No. 3:13-cv-1304-N (BH), 2014 WL 1243684, at *8-*9 (N.D. Tex. Mar. 26, 2014)).

The Commissioner next argues that ALJ properly relied on state agency medical findings. *See id.* The Commissioner argues that the fact that the state agency medical consultants issued their opinions prior to the submission of all of the medical evidence further supports the ALJ's basis for affording the state agency consultants with greater weight because the later submitted medical evidence actually supported the consultants' opinions. *See id.*

And the Commissioner claims that Plaintiff's argument that the ALJ should have contacted Dr. Caivano for clarification is unpersuasive because Plaintiff never alleges that the medical evidence is insufficient to make a disability determination. *See id.* at 10.

Plaintiff replies that the "notion that the ALJ relied on Dr. Nwankwo's examination to formulate the RFC is farcical; there is literally no parallel between

15

these because Dr. Nwankwo did not offer an opinion regarding specific functional limitations." Dkt. No. 19 at 1.

And Plaintiff asserts that, "if the ALJ did indeed translate her examination findings into the RFC, this is clearly impermissible lay opinion." *Id.* at 1-2 (citing *Loza v. Apfel,* 219 F.3d 378, 394 (5th Cir. 2000); *Frank v. Barnhart,* 326 F. 3d 618, 622 (5th Cir. 2003)).

Plaintiff argues that Dr. Nwankwo's findings are not even accounted for in the ALJ's residual functional capacity assessment. *See* Dkt. No. 19 at 2. For example, Dr. Nwankwo noted Plaintiff's use of a cane and lower extremity issues, but the ALJ found that Plaintiff could stand or walk for 6 hours in an 8-hour workday and did not require the use of a cane. *See id.*

Plaintiff also argues that the Commissioner's claim that the ALJ may choose whichever physician's diagnosis is most supported by the record is misguided. *See id.* Plaintiff claims that his argument does not relate to the diagnoses on record but instead the restrictions that stem from certain impairments. *See id.* In this regard, Plaintiff points out that as Plaintiff's treating physician, Dr. Caivano, offered an opinion on Plaintiff's specific functional limitations while Dr. Nwankwo did not. *See id.* at 3.

And Plaintiff points out that the Commissioner's argument that the ALJ need not mention every sing medical record is also misguided. *See id.* Plaintiff claims that the issue in this case is not that the Commissioner failed to mention or discuss a particular medical record or medical records. Instead, Plaintiff argues, the issue here

16

is that the ALJ's failure was a mistake of fact to reject Dr. Caivano's opinion on the basis that Dr. Caivano had last seen Plaintiff in 2017, when in reality he had seen Plaintiff in February 2018. *See id.*

The undersigned is persuaded that Plaintiff has shown reversible error.

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). But courts have also held that treating physician's opinions are far from conclusive because "the ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). In the ALJ's determination, if he or she finds good cause, "less weight, little weight, or even no weight may be given to the physician's testimony." *Greenspan*, 38 F.3d at 237; *see Newton*, 209 F.3d at 456 ("Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.").

But, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton,* 209 F.3d at 453. Put simply, the ALJ must consider the *Newton* factors – derived from

17

Section 404.1527(d) – "when the ALJ intends to reject or give little weight to a treating specialist's opinion," where there is no reliable evidence from a separate treating physician to controvert the first. *Id.* at 458.

Here, Dr. Caivano has served as Plaintiff's primary care physician since 2013. *See* Dkt. No. 15-1 at 1630.

The Commissioner argues that the ALJ correctly rejected Dr. Caivano's opinion in favor of Dr. Nwankwo's opinion. *See* Dkt. No. 18 at 6. And the Commissioner claims that Plaintiff's argument that Dr. Caivano's March 2018 opinion is consistent with other medical opinions "is incorrect on its face" precisely because the ALJ chose to assign more weight to the findings of Dr. Nwankwo than to the findings of Dr. Caivano. *See id.* at 7.

But, based on the record evidence, it does not appear that Dr. Nwankwo's opinion conflicts with Dr. Caivano's opinion. *See* Dkt. No. 15-1 at 839-45. As Plaintiff points out, Dr. Nwankwo identified many of the impairments that Dr. Caivano treated. And, as Plaintiff points out, much of the objective medical evidence supports Dr. Caivano's assessment.

And Dr. Caivano provided Plaintiff with specific functional limitations in 2018 which are not controverted by any of Dr. Nwankwo's findings in 2014.

While the Commissioner argues that the ALJ relied on Dr. Nwankwo's opinion in making her residual functional capacity assessment, there is no evidence that Dr. Nwankwo addresses any specific functional limitations. *See* Dkt. No. 15-1 at 844-50.

Without a controverting opinion, to reject Dr. Caivano's opinion regarding Plaintiff's specific functional limitations, the ALJ would have needed to consider each of the *Newton* factors. Specifically, she would have needed to consider "(1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." *Newton*, 209 F.3d at 456. The ALJ's failure to do so compels remand, where, had she done so and then given Dr. Caivano's opinion greater weight, her RFC determination may have been different.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 20, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE